# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 673 | **DATE** | 6/19/2012 |
| **CASE TITLE** | | O'Connor vs. Chicago Bd of Ed | |

**DOCKET ENTRY TEXT**

The Court denies Defendant's motion for summary judgment [41]. Status hearing set for 7/19/12 is stricken and reset to 6/27/12 at 8:30 a.m.

■[ For further details see text below.]

Notices mailed by Judicial staff.

---

## STATEMENT

On May 18, 2011, Plaintiff Valentina L. O'Connor filed a two-count First Amended Complaint alleging that her employer, Defendant Chicago Board of Education (the "Board"), violated the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2615(a)(1), (b). Before the Court is the Board's summary judgment motion pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court denies the Board's motion.

## BACKGROUND

### I.      Northern District of Illinois Local Rule 56.1

Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). "The Rule is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Pursuant to the Local Rules, the Court will not consider any additional facts proposed in the nonmoving party's Local Rule 56.1(b)(3)(B) Response, but instead must rely on the nonmovant's Local Rule 56.1(b)(3)(C) Statement of Additional Facts. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008).

| | Courtroom Deputy Initials: | KF |
|---|---|---|

The purpose of Local Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). Moreover, the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. The Court may also disregard statements and responses that do not properly cite to the record. *See Cady,* 467 F.3d at 1060. With these standards in mind, the Court turns to the relevant facts of this case.

## II.    Relevant Facts

O'Connor began working for the Chicago Public Schools in 1994 and is presently teaching at New Millennium High School as a special education teacher. (R. 44, Def.'s Rule 56.1 Stmt. Facts ¶ 1; R. 53, Pl.'s Rule 56.1 Stmt. Facts ¶ 1.) From September 2005 to June 2011, O'Connor was a special education teacher at Global Visions Academy High School ("Global Visions") in Chicago. (Def.'s Stmt. Facts ¶ 2.) Global Visions was a small high school consisting of approximately 250-300 students that shared the Bowen campus with three other small Chicago Public Schools. (*Id.* ¶ 3.) On June 30, 2011, the Board closed Global Visions and consolidated the four small schools on the Bowen campus into one school, namely, the New Millennium High School, where O'Connor presently teaches. (*Id.* ¶ 4.) LaTonya Austin was the principal of Global Visions from July 2007 until the school closed in June 2011. (*Id.* ¶ 5; Pl.'s Stmt. Facts ¶ 16.)

During the relevant time period, the school day at Global Visions began at 8:00 a.m. (Def.'s Stmt. Facts ¶ 7.) During the first month of the 2008-2009 school year, O'Connor was approximately 40 minutes late to school on September 8, 9, 10, and 11. (*Id.* ¶ 15.) Thereafter, Principal Austin gave O'Connor a verbal reprimand. (*Id.*) In addition, O'Connor was 20 to 40 minutes late to school on September 16, 17, 19, 22, 23, 25, and 26, 2008. (*Id.* ¶ 16.) At some point in October 2008, Principal Austin gave O'Connor a written reprimand. (*Id.* ¶ 17.) After the October 2008 reprimand, O'Connor was late approximately 49 times, and thus in April 2009, Principal Austin suspended O'Connor for three days. (*Id.* ¶¶ 18, 37; R. 57, Pl.'s Ex. 32.)

In addition, from January 14, 2010 through February 3, 2010, O'Connor was late to her first period class on seven separate occasions, after which Principal Austin issued a Notice of Discipline to O'Connor on February 24, 2010. (*Id.* ¶¶ 40, 41.) On March 11, 2010, Principal Austin issued a Notice of Disciplinary Action and suspended O'Connor for five days. (*Id.* ¶ 41.) On April 29, 2010, Principal Austin issued a Notice of Pre-Disciplinary Hearing based on O'Connor punching into work at different locations – such at Morgan Park High School which was approximately ten miles away from Global Visions – but the hearing was not conducted during the 2009-2010 school year because O'Connor was given approved leave from May 4, 2010 through the end of the school year. (*Id.* ¶¶ 43-45.)

O'Connor returned from her leave at the beginning of the 2010-2011 school year. (*Id.* ¶ 46.) On October 8, 2010, Principal Austin conducted a disciplinary hearing with O'Connor based on her punching into work at locations other than Global Visions – conduct occurring in the previous school year – after which Principal Austin suspended O'Connor. (*Id.*) At O'Connor's hearing on appeal, it was brought to Principal Austin's attention that she had mis-recorded the amount of times O'Connor had punched in at Morgan Park High School. (*Id.* ¶ 47.) Nevertheless, it is undisputed that O'Connor had punched in at Morgan Park High School instead of Global Visions on numerous occasions during the relevant time period. (*Id.* ¶¶ 44, 47.)

Further, O'Connor admits that she was often late to school, but contends that she had a justifiable reason due to her son's episodes in the morning related to his bipolar disorder and Attention Deficit Hyperactivity Disorder ("ADHD"). (Def.'s Stmt. Facts ¶¶ 19, 38; Pl.'s Stmt. Facts ¶ 2.) O'Connor's son Michael, who is now

21-years-old, was diagnosed with bipolar disorder and ADHD and takes prescribed medications in connection with these conditions. (Def.'s Stmt. Facts ¶ 19; Pl.'s Stmt. Facts ¶¶ 2, 8.)  Michael's prescriptions are powerful, psychotropic medicines and O'Connor supervises her son's morning dosages of his medication.  (Pl.'s Stmt. Facts ¶¶ 9, 10.)

Based on her son's bipolar disorder and ADHD, O'Connor maintains that starting in 2006 she asked her supervisors for "informal intermittent" FMLA leave in order to be 1 to 15 minutes late for the 8:00 a.m. school day.[1] (Pl.'s Stmt. Facts ¶ 18.)  In the meantime, O'Connor applied for and was granted approved FMLA leave from May 4, 2010 through August 2, 2010 and from January 19, 2011 through May 1, 2011, in which she indicated she needed time off to provide support to her son Michael due to his bipolar disorder.  (*Id.* ¶ 51.)  O'Connor also took approved leave in January 2011 and did not return to Global Visions for the remainder of the 2010-2011 school year.  (*Id.* ¶ 55.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).  The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).  "[D]istrict courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.,* 629 F.3d 697, 704-05 (7th Cir. 2011) (internal citations omitted).

## ANALYSIS

An employee is entitled to twelve weeks of leave every twelve-month period if she is afflicted with a serious health condition that prevents her from performing the functions of her job or to care for a child, spouse, or parent with a serious health condition. *See Smith v. Hope Sch.,* 560 F.3d 694, 699 (7th Cir. 2009); *Pirant v. United States Postal Serv.,* 542 F.3d 202, 206 (7th Cir. 2008); *see also* 29 CFR § 825.124.  The FMLA "further provides that employers may not 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act].'" *Righi v. SMC Corp.,* 632 F.3d 404, 408 (7th Cir. 2011) (citation omitted).  In her First Amended Complaint, O'Connor brings both FMLA interference and retaliation claims.  The Court addresses each claim in turn.

---

[1]  In her brief in opposition to the Board's summary judgment motion, O'Connor maintains that she repeatedly asked to be 5 to 10 minutes late to work to care for her son, instead of 1 to 15 minutes late.

## I.      FMLA Interference Claim

In Count I of her First Amended Complaint, O'Connor maintains that the Board interfered with her informal intermittent FMLA leave because Principal Austin disciplined her for being late to work.[2] To prevail on her FMLA interference claim, O'Connor must establish that: "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 825 (7th Cir. 2011) (citation omitted).

The Board has set forth its written policy for obtaining FMLA leave in the Chicago Public Schools Policy Manual. (Def.'s Stmt. Facts ¶ 49; Ex. C, CPS Policy.)  The Board's policy provides for intermittent FMLA leave, but not "informal intermittent" leave as O'Connor contends. (*Id.* ¶ 50.)  In any event, along with the CPS's policy, the FMLA itself provides for intermittent leave, *see* 29 C.F.R. § 825.203, and imposes certain requirements. *See Ridings v. Riverside Med. Ctr.,* 537 F.3d 755, 765 (7th Cir. 2008).  Intermittent leave is allowed only when "medically necessary." *See Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 87, 122 S.Ct. 1155, 1160 (2002); 29 U.S.C. § 2612(b)(1); 29 CFR § 825.204(c).

The parties disagree as to whether O'Connor's intermittent leave was based on a medical necessity.  The Board does not argue that bipolar disorder accompanied by ADHD is not a serious health condition as defined by the FMLA.  Instead, the Board contends that O'Connor's care for her son, Michael, in the morning was not based on the need for her to help medicate and care for Michael, but was based on Michael's unreasonable demands, drug and alcohol abuse, and his drug and alcohol abuse's interference with his prescription medications. *See Darst v. Interstate Brands Corp.,* 512 F.3d 903, 908 (7th Cir. 2008) ("absence because of the employee's use of the substance, rather than for treatment, does not qualify for FMLA leave").

Here, there is undisputed evidence in the record that during the relevant time period Michael had an alcohol and drug abuse problem and that he exhibited erratic behavior. (*See* Def.'s Stmt. Facts ¶ 26, Pl.'s Stmt. Facts ¶ 15.)  But, there is also evidence in the record creating a genuine dispute of material fact that Michael's erratic behavior was due to his bipolar disorder, and that alcohol and drug abuse were only part of Michael's problems, which not only included his bipolar disorder and ADHD, but also manic and depressed episodes. (Pl.'s Stmt. Facts ¶¶ 5, 14, 15.)  There is additional evidence in the record that if O'Connor did not help administer Michael's prescriptions drugs, Michael would not take his medication, which, at times, would result in Michael's hospitalization. (*Id.* ¶¶ 10, 14, 15.)  Thus, viewing the facts and all reasonable inferences in O'Connor's favor – as the Court is required to do at this procedural posture – there are genuine issues of material fact regarding the cause of Michael's behavior and O'Connor's need to help medicate and care for him in the morning.

In addition, there is sufficient evidence in the record creating a genuine dispute as to the material fact that O'Connor gave her supervisors sufficient notice of her need to care for her son in the morning and that this was the reason for her tardiness. (Pl.'s Ex. 7-14, Pl.'s Stmt. Facts ¶¶ 17, 18.)  As the Seventh Circuit teaches, the FMLA notice requirement is not demanding: "The employee's duty is merely to place the employer on notice of a

---

[2] O'Connor also argues that – based on Principal Austin's alleged harassment – the Board interfered with her FMLA benefits.  In particular, O'Connor maintains that Principal Austin harassed her by disciplining her for being late to work and changing O'Connor's teaching schedule.  Because O'Connor's cursory harassment argument overlaps with her discipline argument, the Court will address them together.  Moreover, evidence of harassment, alone, cannot establish a FMLA interference claim. *See Simpson v. Office of Chief Judge of Circuit Court of Will County, Ill.,* 520 F.Supp.2d 998, 1009 n.10 (N.D. Ill. 2007).

probable basis for FMLA leave. He doesn't have to write a brief demonstrating a legal entitlement. He just has to give the employer enough information to establish probable cause, as it were, to believe that he is entitled to FMLA leave." *Stevenson v. Hyre Elec. Co.,* 505 F.3d 720, 725 (7th Cir. 2007) (citation omitted). Indeed, it "is enough under the FMLA if the employer knows of the employee's need for leave; the employee need not mention the statute or demand its benefits." *Byrne v. Avon Prods., Inc.,* 328 F.3d 379, 382 (7th Cir. 2003). Moreover, the CPS's FMLA Policy does not require that notice be put in writing. (CPS's Policy at III(C)). Therefore, there is a genuine dispute as to the material fact that O'Connor gave sufficient notice.[3]

That there are genuine disputes as to the material facts in this case is also evidenced by the fact that O'Connor was late to work on numerous occasions during September through December 2008, yet her son was not living at home at the time. (Def.'s Stmt. Facts ¶ 20.) Also, although O'Connor maintains that she was entitled to intermittent leave of anywhere from 1 to 15 minutes in the morning to supervise her son's dosages of medication and to attend to his medical needs, the Board also disciplined her for being well over 20 to 40 minutes late during the relevant time period. (*Id.* ¶¶ 15, 16.) Last, O'Connor was disciplined for punching into work at Morgan Park High School, but it is unclear whether O'Connor is arguing that this was part of her FMLA leave. These factual issues and disputes, however, do not change the Court's conclusion that the Board has failed to establish that judgment as a matter of law is appropriate at this juncture. The Court therefore denies the Board's summary judgment motion as to O'Connor's FMLA interference claim as Count I of the First Amended Complaint.

## II.    FMLA Retaliation Claim

In Count II of the First Amended Complaint, O'Connor alleges that the Board retaliated against her for exercising her right to intermittent FMLA leave. Plaintiffs may proceed under the indirect or direct method of proof to establish a FMLA retaliation claim. *See Goelzer v. Sheboygan County, Wis.,* 604 F.3d 987, 995 (7th Cir. 2010). Also, the difference between FMLA interference and retaliation claims is that retaliation claims require proof of discriminatory or retaliatory intent. *See id.*; *Cole v. Illinois,* 562 F.3d 812, 817 (7th Cir. 2009).

The Board's only argument in support of its summary judgment motion as to O'Connor's FMLA retaliation claim is that O'Connor is not eligible for intermittent FMLA leave in the first instance because her son's alcohol and drug abuse caused his erratic behavior. *See Daugherty v. Wabash Ctr., Inc.,* 577 F.3d 747, 750 (7th Cir. 2009) ("To show a violation of FMLA rights, plaintiffs must show that they are eligible for FMLA protection"); *Long v. Teachers' Ret. Sys. of Ill.,* 585 F.3d 344, 350 (7th Cir. 2009) ("An employer cannot retaliate if there is nothing for it to retaliate against.") (citation omitted). As discussed above, construing the facts and all reasonable inferences in O'Connor's favor, there is a genuine dispute as to the material fact regarding the cause of Michael's behavior and O'Connor's need to help medicate and care for him in the morning.

Accordingly, the Board has failed in its burden of establishing there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 323. Therefore, the Court denies the Board's summary judgment motion as to O'Connor's FMLA retaliation claim as alleged in Count II of the First Amended Complaint.

---

[3]    The Court did not address the Board's arguments made for the first time in its reply brief. *See Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 571 (7th Cir. 2012) ("arguments raised for the first time in a reply brief are waived"). "The underlying concern is to ensure that the opposing party is not prejudiced by being denied sufficient notice to respond to an argument." *Hernandez v. Cook County Sheriff's Office,* 634 F.3d 906, 913 (7th Cir. 2011).